HARRIS, Appellant, vs. SNYDER, Sheriff, and another, Respondents.

*February 18—March 11, 1902.*

*Appeal and error: Notice: Proof of service: Order staying execution: Sheriff: Liability for failure to execute process: Circuit judge: Immaterial error: Questions reviewed on appeal.*

1. On hearing of an order to show cause why an execution, issued after notice of appeal and proper undertaking had been given, should not be stayed, it appeared, from the proof of service, and was uncontradicted, that such notice and undertaking were "personally" served upon the clerk of the circuit court, and also upon one of the attorneys for the adverse party "by delivering the same to him at West Superior" on a given date. *Held*, that the proof of service was sufficient to satisfy sec. 2820, Stats. 1898, providing that service of notices, pleadings and other papers in any action may be made personally by delivery of a copy of the paper to be served to the party, or attorney, on whom service is to be made.

2. In an action against a sheriff for failure to execute an execution, it appeared, among other things, that the attorney for the execution creditor had been served with notice of appeal August 27; that the execution issued August 31, was partially executed on September 1, and that the sheriff, having been informed by the attorneys for the execution debtor, and the deputy clerk, that an appeal had been regularly taken, and, while arranging for security with the view of proceeding with the execution of the writ, was served with an order of the circuit

judge staying proceedings thereunder. *Held*, that the stay order, when served on the sheriff, operated as a *supersedeas*, and it was not error to admit that order in evidence.

3. Sec. 3056, Stats. 1898, provides that, if the judgment appealed from direct the sale or delivery of possession of real property, the undertaking to stay judgment on appeal must be "in such sum as the court or presiding judge thereof shall direct." Sec. 2812 provides that every written direction of a court or judge, not included in a judgment, is denominated an order. Circuit Court Rule IV, sec. 9, provides that the clerk shall enter a brief statement of all applications for orders, etc., in his minute book, with the action of the court thereon. In an action against a sheriff for refusal to enforce an execution, issued on a judgment directing the delivery of possession of real property, the affidavit, on which an order to show cause why such execution should not be stayed was granted, expressly stated that the court had fixed the amount of the undertaking to be given on appeal from the judgment, and that the notice of appeal and requisite undertaking had been served and filed before the execution had issued. *Held*, that the circuit judge was at liberty to act on his own knowledge as to whether he had fixed the amount of such undertaking, and that the only fact which the execution debtor was required to show, *not within the personal knowledge of the presiding judge*, was whether, after the amount was so fixed, the undertaking was in fact given, and the appeal perfected, before the execution was issued.

4. In such case, if the circuit judge was satisfied that the amount of the undertaking was so fixed, and that the notice of appeal and undertaking was served and filed before the execution was issued, the notice and undertaking operated as a *supersedeas* without any further order, and it is immaterial that the record failed to show what, if anything, was done upon the hearing of such order to show cause.

5. A cause of action not alleged in the complaint nor litigated upon the trial, will not be considered on appeal.

DODGE, J., dissents.

APPEAL from a judgment of the circuit court for Douglas county: A. J. VINJE, Circuit Judge. *Affirmed.*

The complaint in this section alleges, in effect, that January 22, 1900, a judgment was recovered in the circuit court in favor of Margaret Britts in an action of ejectment against John Finn *et al.* for the land described, and $198.81 dam-

ages and costs; that August 31, 1900, the usual execution in such cases was duly issued thereon to the defendant *Snyder* as sheriff; that September 1, 1900, *Snyder* partially executed the writ, and then, against the request and direction of the plaintiff, and in violation of the express directions in the writ, willfully and unlawfully redelivered the possession of the premises to the defendants therein, John Finn *et al.,* to the great and irreparable damage of the plaintiff; that during the times mentioned the plaintiff was the owner of the judgment and execution by purchase, assignment, and conveyance from Margaret Britts; and the complaint demanded damages. The defendant *Snyder* answered by way of admissions, denials, and counter allegations to the effect that, before the execution was issued, John Finn *et al.* had perfected an appeal to this court from the judgment upon which it was so issued, and given the requisite undertaking to stay all proceedings on such judgment. At the close of the trial of such issues the circuit court directed a verdict in favor of the defendants, and from the judgment entered thereon the plaintiff brings this appeal.

It appears from the record, and is undisputed: That the judgment upon which the execution was so issued was recovered and entered January 22, 1900. That August 14, 1900, the defendants therein, John Finn *et al.,* prepared a notice of appeal to this court from that judgment, and also an undertaking, with two sureties, reciting the judgment; and thereby undertook, in effect, that the appellants would pay all costs and damages that might be awarded against them on the appeal, not exceeding $250, and also undertook in the sum of $600, "the amount fixed by the above-named court by order dated February 13, 1900," that during the possession of such property by the appellants they would not commit nor suffer to be committed any waste thereon, and that, if the judgment be affirmed, they would pay the value of the use and occupation of the property from the time of the appeal until the delivery of possession thereof, pursuant to the judgment, together with all damages and costs. That each of such sureties

justified to the effect that he was a resident and freeholder within this state, and was worth the sum of $800 over and above all his debts and liabilities in property within this state not exempt from execution. That August 27, 1900, such notice of appeal and undertaking were duly served upon the attorneys for the plaintiff therein, and upon W. H. Locke, clerk of the circuit court in which such judgment was entered, and from which such execution was issued by the deputy clerk of said court, F. J. Christopher, August 31, 1900. That at the time the deputy sheriff received such execution on the day and year last named the plaintiff delivered to him his bond, with two sureties, indemnifying him in the sum of $500 against all costs, damages, and expenses by reason of his proposed action in delivering the property to the plaintiff. That the deputy sheriff, with three men furnished by the plaintiff to assist him, started for Foxboro, where the property was situated, about eleven o'clock on the evening of August 31, 1900. That soon after eight o'clock the next morning the deputy demanded possession of the premises from Mr. Finn, who declined to surrender the same, and told the deputy that he could go ahead and take possession, but that he waived no rights, and would not give up possession peaceably. That the deputy then proceeded to remove goods from the premises, and continued doing so for about three-quarters of an hour. That he might have gotten them all out by noon, or some time later. That he could have gotten them all out by three or four o'clock of that day. That a few minutes after nine o'clock that morning, and while the deputy was in the act of removing such goods, he received a telegram from the defendant *Snyder,* dated that morning at West Superior, to "do nothing till further notified." That about an hour afterwards the deputy received another dispatch from the sheriff as follows:

"Give Marren & Finn full possession of everything you may have taken. Pay no attention to what Arnold says. Wire me if you understand. Come home next train.

"*I. N. Snyder.*"

That the deputy thereupon, in obedience to such telegram, surrendered possession to John Finn *et al.* The defendant *Snyder,* among other things, testified to the effect: That the next morning after he so sent his deputy with the execution to Foxboro he met the attorney for the defendants therein, John Finn *et al.,* and was told by him that he had taken an appeal to this court from the judgment upon which the execution was issued. That he then sent to his deputy the first telegram mentioned. That he then had an interview with Mr. Cooper, one of his attorneys in this case, and the result was that he then sent the second telegram mentioned above. That he then saw one of the attorneys for the plaintiff, who proposed to give a surety bond to protect him, but that before that was done the deputy returned home, and he was served with a stay of proceedings, to-wit, an order made by the circuit judge in the case of Margaret Britts against John Finn *et al.,* of which, omitting the title, the following is a copy:

"Upon reading the affidavit of Arch'b. McKay, defendant's attorney, it is ordered that the plaintiff show cause before this court at the court house in the city of Superior on the 15th day of September, 1900, at the opening of court on that day, or as soon thereafter as counsel can be heard, why the execution writ of possession issued herein should not be set aside and vacated or stayed upon the ground that it was issued without authority, and after an undertaking on appeal had been duly and regularly given, and the action appealed to the supreme court of Wisconsin; and in the meantime, and until the hearing of said order, let all proceedings on the execution be stayed.

"Dated Sept. 1, 1900.                    .    A. J. Vinje,
                                             "Circuit Judge."

The affidavit upon which that order was so based stated, among other things, the following:

"That on the 13th day of February, A. D. 1900, the above court fixed the amount of the bond on appeal to the supreme court in order to stay execution at $600, and on the 29th day of August, A. D. 1900, the requisite undertaking and notice

of appeal were filed in the office of the clerk of the circuit court for Douglas county, the same having been before that date served upon the attorney for plaintiff and on the clerk of said court, and the said appeal was duly and regularly taken to said supreme court;" and that the execution was still in the hands of the sheriff, who threatened to execute the same, unless restrained.

The deputy clerk of the circuit court, F. J. Christopher, testified to the effect that he saw the execution before it was issued out of the office of the clerk of the circuit court, August 31, 1900, at the request of the plaintiff's attorney; that he had not then seen the certified copy of the undertaking given by John Finn *et al.* on the appeal to this court, the substance of which is stated above, nor the original undertaking; that at the time he issued the execution he did not know that an undertaking had been filed in that case, but that he then (at the time of testifying) knew that there was an undertaking on file at the time the execution was so issued, and that he informed the sheriff of the fact the next day after the execution was so issued. Such are the undisputed facts in the case, upon which the court directed a verdict in favor of the defendants.

For the appellant there were briefs by *Arnold & Arnold,* and oral argument by *J. B. Arnold.*

For the respondents the cause was submitted on the brief of *Archibald McKay* and *Geo. C. Cooper.*

Cassoday, C. J.    1. It is undisputed that the notice of appeal to this court in the case of Britts against Finn *et al.* and the undertaking mentioned were "personally" served "on Wm. H. Locke, clerk of the circuit court for Douglas county, by delivering the same to him at West Superior" on August 27, 1900, and that true copies thereof were "personally" served "on N. B. Arnold, one of the attorneys for the plaintiff" therein, "by delivering the same to him at West Superior"

on August 27, 1900. The proof of service seems to be sufficient to satisfy the statute, especially as the question was raised upon such order to show cause, and is uncontradicted. Sec. 2820, Stats. 1898. A different statute prescribes the proof for the service of a summons when made by any other person than the sheriff. Sec. 2642, Stats. 1898.

2. It is claimed that the order staying proceedings made by the circuit judge September 1, 1900, was improperly admitted in evidence, since it was not served until after the sheriff had refused to execute the process and had recalled his deputy from Foxboro. But, as indicated in the statement of facts, the sheriff sent the telegrams mentioned after he had been informed by the attorney for the defendants in the execution and the deputy clerk, in effect, that, before the execution had been issued, an appeal had been regularly taken to this court, and the undertaking mentioned had been given, and filed in the office of the clerk of the circuit court; and that, while the defendant was arranging for new security with the view of executing the writ the order staying proceeding was served upon him. Such knowledge having been brought home to the sheriff, it would seem that he was entitled to delay a reasonable length of time for investigation. Thus it was held by this court at an early day that "an officer having knowledge of a want of jurisdiction in a tribunal or officer issuing the process, persisting in its execution, would be liable." *Sprague v. Birchard,* 1 Wis. 457. So it has been held:

"But the officer will not be protected by such process if he have notice *aliunde* of some jurisdictional defect which renders the judgment void." *Grace v. Mitchell,* 31 Wis. 533. See *Power v. Kindschi,* 58 Wis. 541.

There are other cases holding that an officer is not protected by process regular on its face, if he has knowledge of a defect in the previous proceedings which renders such process void or voidable. See cases cited in the note, by Mr. Freeman, to

*Savacool v. Boughton,* 21 Am. Dec. 201. *Leachman v. Dough-erty,* 81 Ill. 324. Thus it has been recently held in Massachusetts:

"Where a court has no jurisdiction of the subject-matter of the controversy, or over the persons of the parties, an officer who is informed of facts concerning the truth of which he can have no reasonable doubt, which show, as matter of law, that the court has no jurisdiction, proceeds at his peril in making an arrest in a civil process, although the want of jurisdiction does not appear on the face of the process." *Tellefsen v. Fee,* 168 Mass. 189.

Such adjudications are in harmony with the rulings of this court, although others may be found the other way. It is said by a standard text writer that:

"If a *supersedeas* issues, the sheriff need not question its propriety, except so far as to ascertain that the court had jurisdiction to grant it. The allowance of a writ of error operates as a *supersedeas.* After notice of such allowance, or of any other *supersedeas,* an officer who proceeds with the execution of the writ is a trespasser." 1 Freeman, Executions. (3d ed.), § 105, and cases there cited.

This seems to be the undoubted law. If the appeal was perfected, and the undertaking was sufficient to stay proceedings on the judgment prior to the issue of the execution, then it operated as a *supersedeas.* In any event, the order of the circuit judge, when served upon the defendant, operated as a *supersedeas.* There was no error, therefore, in admitting that order in evidence.

3. But it is contended that the undertaking was insufficient to satisfy the requirement of the statute, which declares:

"If the judgment appealed from direct the sale or delivery of possession of real property, . . . the execution of the same shall not be stayed, unless an undertaking be executed on the part of the appellant, by at least two sureties, in such sum as the court or the presiding judge thereof shall direct, to the effect" as therein stated. Sec. 3056, Stats. 1898.

The particular claim is that the record fails to show that any such order was ever made, entered, or served, fixing the amount of such undertaking, as prescribed by that section. To stay proceedings, the amount named in the undertaking must be "in such sum as the court or the presiding judge thereof shall *direct.*" But the statute also declares:

"Every direction of a court or judge made or entered in writing, and not included in a judgment, is denominated an order." Sec. 2812, Stats. 1898.

So the rules of the circuit court declare:

"All applications to the court for orders or judgments, whether *ex parte* or otherwise, shall be publicly announced by the attorney making the application, and the clerk *shall enter a brief statement* thereof, in his minute book, *with the action of the court thereon;* and no such order shall be operative unless such statement shall be then and there so entered." Sec. 9, Rule IV.

So it appears that the only way to so fix the amount was by written order or such brief statement entered in the minute book by the clerk, with the action of the court thereon. It will be observed that the affidavit of the attorney for John Finn *et al.,* upon which the order to show cause was based, expressly stated that the court had fixed the amount of the bond on appeal to this court in order to stay execution at $600 on February 13, 1900, and that the notice of appeal and the requisite · undertaking had been served on the clerk and the plaintiff's attorney and filed in the clerk's office some days before the execution had been issued. In other words, the order was based in part upon the action of the court over which the judge making the order presided, and of which he must, necessarily, have had knowledge as to whether the statement was true or false. If the judge had supposed that he never fixed the amount of the undertaking as stated, it is fair to assume that he never would have made the order requiring the plaintiff to show cause why the execution should not be set aside and vacated as having been issued without authority, and after

the undertaking had been duly and regularly given, and the appeal to this court perfected. The only facts which the plaintiff was thus required to show, *not within the knowledge of the presiding judge,* was whether, after the amount was so fixed, the undertaking was in fact given, and the appeal perfected, before the execution was issued. That the judge was at liberty to thus act upon his own knowledge as to whether he so fixed the amount cannot be doubted. *Jackman Will Case,* 27 Wis. 409, 413; *Lego v. Shaw,* 38 Wis. 402; *Schattschneider .v. Johnson,* 39 Wis. 387; *Ross v. Hanchett,* 52 Wis. 496,497; *Cartright v. Town of Belmont,* 58 Wis. 376, 377; *Challoner . v. Boyington,* 86 Wis. 219. But it may be said that the order to show cause was returnable some days after it was made, and that the record fails to show what, if anything, was done by the court upon the hearing. It is enough to say that, if the court was satisfied that the amount was so fixed, as required by statute, and the notice of appeal and undertaking were served and filed before the execution was issued, then, under the authorities cited, the notice of appeal and undertaking operated as a *supersedeas,* without any further order by the court. They operated to avoid and nullify the execution, which was manifestly issued by the deputy clerk inadvertently, and without knowing that the appeal had been taken and the undertaking filed. The undertaking substantially complied with the provision of the statute cited (sec. 3056).

4. It is claimed, however, that it fails to comply with the statute which prescribes the form of an undertaking for staying execution on a money judgment (sec. 3053). It is enough to say that no such cause of action was alleged· in the complaint or litigated upon the trial.

*By the Court.*—The judgment of the circuit court is affirmed.

DODGE, J. Plaintiff has proved without dispute the rendition of a valid judgment entitling him to the possession of

certain premises; the issue of an execution in due form, commanding the sheriff to deliver such possession; also the delivery of such execution, that performance was within sheriff''s ability, and that he refused to execute the writ, to plaintiff's pecuniary injury. This, it seems to me, makes a complete *prima facie* case for recovery of damages. The statute (sec. 725, Stats. 1898) imposes on the sheriff the duty to execute the writ. True, he may refuse if it be not valid, but its invalidity must be shown in order to excuse him. It carries with it, like all process of a court of record, presumption of regularity and validity. But one possible excuse is suggested for defendant's neglect to carry out the writ, namely, the service of a notice of appeal and stay bond; but, so far as the proof in the case went, that excuse was not proved at all. The undertaking filed was waste paper unless the amount thereof had been fixed by the court or judge (sec. 3056, Stats. 1898), of which no evidence is given; and yet the sheriff is held excused from executing the command of the court's writ, and plaintiff, with no fault of his, is deprived of his rights under the judgment. I cannot concur in a rule of law which thus emasculates both judgment and statute. In my opinion, defendant is liable for disobedience of the writ delivered to him, unless he proves its invalidity. I therefore dissent from the judgment of the court.